UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAREK FARAG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DONALD TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; JOHN KELLY, in his official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF STATE; REX TILLERSON, in his official capacity as Secretary of State; the UNITED STATES OF AMERICA; and OTHER UNKNOWN DEFENDANTS, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 17 C 2307

Judge Feinerman

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

*Pro se* Plaintiff Tarek Farag ("Farag") has now filed his Second Amended Complaint in this action. It has no more merit than his prior two. He still seeks to impose, by judicial decree, far-reaching changes to the enforcement of U.S. law so that it is implemented in a manner more to his liking. After three attempts, it remains clear that Farag's claims lack any basis in law. The Court should, therefore, dismiss this action with prejudice.

Dismissal is required, first, because Farag has failed to allege any basis for Article III standing for Counts I through VIII. He has failed to identify any particularized injury-in-fact that he has suffered in those counts. Rather, he simply has expressed generalized grievances about how the Government operates and raised speculative fears about imagined threats. Likewise, to

1

the extent he is challenging potential future action and raising abstract disagreements over administrative policies, his claims are not ripe and should be dismissed.

In addition, he has failed to state a claim under the Administrative Procedure Act ("APA") because he has failed to identify any agency action, let alone any final agency action, that he wishes to challenge. Moreover, the enforcement of immigration law and conduct of U.S. foreign policy are generally matters of prosecutorial and executive discretion not subject to judicial review under the APA. Although Farag seeks to assert a claim under 8 U.S.C. § 1182 to bar certain foreign leaders from entering the country, that provision does not create a private cause of action. Moreover, it does not say what he thinks it says. His interests are so marginally related to the purposes of the statutes he cites that it cannot reasonably be assumed that Congress authorized him to sue.

Lastly, the Court should dismiss, for lack of subject matter jurisdiction, Farag's new claim that seeks compensation for the alleged damage to his "business in the nuclear field" from alleged deals made by former U.S. presidents and administration officials. While that claim is meritless, the Court can dismiss it because Farag has failed to exhaust his administrative remedies for that claim, as required by law, and because the Federal Tort Claims Act does not permit challenges to officials' exercise of their discretionary duties.

## BACKGROUND

Farag filed his initial complaint in this action on March 27, 2017. ECF No. 1. He filed his First Amended Complaint on May 13, 2017. ECF No. 21. On August 28, 2017, Farag filed his Second Amended Complaint. ECF No. 39.

As before, Farag states that he is bringing this action to safeguard his "life, family, property, and community against the Islamic terrorists or potential terrorists that already entered,

or promoting their ideologies in the U.S." 2d Am. Compl. ¶ 9. His Second Amended Complaint lists the following purported causes of action: Count I, "Declaratory Relief that Sharia is Incompatible with Our Laws and Constitution, and Should be Banned"; Count II, "Injunctive Relief Banning the Application of Sharia in the U.S.A."; Count III, "Injunctive Relief Enjoining Entrance of the People That Believe in Sharia from Entering the U.S.A."; Count IV, "Injunctive Relief Enjoining Muslims in the USA Except Those who Satisfy Certain Conditions"; Count V, "Compel President Donald Trump to Reissue His Executive Order to Better Protect the Country"; Count VI, "Compel the Defendants to Enforce Our Immigration Laws"; Count VII, "Compel the Defendants to Vet the People Entering the U.S. to Make Sure They Do Not Endanger Our Wellbeing"; Count VIII, "It Is a Violation of Our Laws to Admit the President of Egypt or Other Foreign Government Officials Who Have Violated Religious Freedom"; and Count IX, "Compensate Plaintiff for Destroying his Business."

## ARGUMENTS

**I.     Counts I through VIII should be dismissed for lack of subject matter jurisdiction because there is no "case" or "controversy" at this time.**

Article III of the Constitution limits federal courts' jurisdiction to certain "Cases" and "Controversies." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (explaining that no principle is "more fundamental to the judiciary's proper role in our system of government" than this requirement) (citations and quotations omitted); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (discussing the importance of this limitation in our system of separated powers).

Counts I through VIII should be dismissed for lack of subject matter jurisdiction because they raise no actual "case" or "controversy" at this time. For Counts I through VIII, the counts in which Farag complains about the Government's immigration policies, he has failed to identify a

particularized injury for purposes of standing and, moreover, any controversy is not yet ripe for judicial review because Farag is asking the Court to address abstract questions.

  A. **Generalized grievances do not constitute an injury in fact that can be redressed by this Court.**

One element of the "case" or "controversy" requirement is that a plaintiff "must establish that they have standing to sue." *Clapper*, 568 U.S. at 408 (citations and quotations omitted). To establish Article III standing, an injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id*. at 409 (citations and quotations omitted); *see also Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014) (explaining that "the injury must affect the plaintiff in a personal and individual way") (citations and quotations omitted); *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014) (affirming dismissal for lack of standing where plaintiffs did not "complain about anything done to them personally" by the Government). This principle is a longstanding feature of federal court jurisdiction. *See Massachusetts v. Mellon*, 262 U.S. 447, 488-89 (1923) ("The party who invokes the power [of judicial review] must be able to show not only that the statute is invalid but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally").

In applying this principle, the Supreme Court has consistently held that a plaintiff does not state an Article III case or controversy by raising "only a generally available grievance," claiming "only harm to his and every citizen's interest," and seeking relief that would benefit him no more than it would benefit the public at large. *Lance v. Coffman*, 549 U.S. 437, 439–40 (2007) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Thus, the "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting

4

differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Valley Forge Christian Coll.*, 454 U.S. at 483.

More specifically to the topic at hand, the Supreme Court has held that private persons "have no judicially cognizable interest in procuring enforcement of immigration laws" in the abstract. *Sure-Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 897 (1984); *cf. Bilbro v. Haley*, 229 F. Supp. 3d 397, 414, 418 (D.S.C. 2017) (dismissing for lack of standing a lawsuit by a concerned citizen seeking to bar the resettlement of certain refugees on the grounds that it may lead to more crime and the spread of contagious diseases).

Here, to support Counts I to VIII, Farag has made no attempt to identify a particularized injury-in-fact that he claims that he has suffered. He does argue that he has had to pay additional fees in court and to board an airplane. 2d Am. Compl. ¶ 82. But he fails to allege how those extra fees are related to the generalized failure of the federal government to enact the immigration measures he seeks. He also claims that the "the government wastes trillions of our tax money on failed and useless security agencies." *Id.* But any economic impact to Farag himself is "plainly undifferentiated and 'common to all members of the public'" and thus insufficient for him to establish standing. *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)).

Farag's alleged injuries also fail to establish standing because they are speculative. Farag claims that he "was suffering, is suffering, and will suffer total inability to live [a] normal life, in fear of Muslims that believe in Sharia that mandates them to brutally massacre him and others that never did anything harmful to them. . ." 2d Am. Compl. ¶ 81. But Farag's subjective fears about events that are unlikely to ever occur do not establish standing. *Schmidling v. City of Chicago*, 1 F.3d 494, 499 (7th Cir. 1993) ("anticipation, fervor of advocacy, speculation, or even

fear is not enough by itself to establish standing"). Farag alleges an interest in protecting the lives of himself, his family, and the community against terrorists, 2d Am. Compl. ¶ 9, but again, that interest is a textbook example of a generalized "grievance about the government" and how it enforces U.S. law. *See Lance*, 549 U.S. at 439-40.

In addition to failing to allege a lack of particularized, actual injury specific to him, Counts III through VIII should be dismissed because they merely seek "a particular kind of Government conduct," *Valley Forge Christian Coll.*, 454 U.S. at 483, and to "procur[e] enforcement of immigration laws." *Sure-Tam, Inc.*, 467 U.S. at 897. Farag's desire for a particular government policy does not grant him standing to bring those counts of his Second Amended Complaint. *See Valley Forge Christian Coll.*, 454 U.S. at 483*; Sure-Tam, Inc.*, 467 U.S. at 897. Farag apparently feels strongly about the topics in his Second Amended Complaint, but "standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *See Valley Forge*, 454 U.S. at 486.

Immigration policy can be controversial. But Farag's disagreement with the Federal Government's exercise of its plenary authority over immigration policy, no matter how heartfelt, does not transform that policy dispute into a case or controversy for purposes of Article III standing. In the absence of a non-speculative, particularized injury, traceable to Government action, and redressable by a favorable ruling, Farag has failed to establish standing, and so Counts I through VIII must be dismissed. *See Clapper*, 568 U.S. at 408-09.

**B.     Abstract questions do not constitute a controversy ripe for judicial review.**

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."

6

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quotations omitted) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Determining whether administrative action is ripe for judicial review requires courts to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Nat'l Park Hospitality Ass'n*, 538 U.S. at 808 (citing *Abbott Labs.*, 387 U.S. 149).

Here, for Counts I to VIII, Farag has failed to identify any issue fit for a judicial decision or any hardship that he will currently suffer if the Court withholds consideration. For example, he alleges that the Government may in the future admit certain foreign government officials in violation of 8 U.S.C. § 1182. 2d Am. Compl. ¶¶ 134. Putting aside Farag's lack of standing to raise that claim, it is not even properly before the Court because it is premised on future events that may never happen. *See* Minute Entry, ECF No. 16 (denying Farag's motion for declaratory order). That claim, therefore, is not fit for judicial review at this time, and Farag cannot suffer any hardship if the Court withholds consideration. For this additional reason, Counts I through VIII of Farag's Second Amended Complaint should be dismissed for lack of subject matter jurisdiction.

**II.     Counts I through VIII should also be dismissed for failure to state a claim.**

Farag fails to state a claim under the APA in Counts I through VIII because he has failed to identify any discrete agency action, let alone any final agency action, that he wishes to challenge. Likewise, he has failed to state a claim under 8 U.S.C. § 1182 because that statute does not create a private cause of action and because, on its face, it does not apply. Moreover, Farag is not within the zone of interests of either the APA or 8 U.S.C. § 1182.

**A.     Farag fails to state a claim under the APA.**

The APA provides a general cause of action to "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by action within the meaning of a relevant

7

statute." 5 U.S.C. § 702.[1] Under the APA, a federal court can review final agency actions and "hold unlawful and set aside agency action, findings, found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A).

This review is limited to the set of discrete agency actions set forth in the APA, specifically 5 U.S.C. § 551(13). *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62, 64 (2004) (litigant "cannot seek *wholesale* improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made," and instead "must direct its attack against some particular 'agency action' that causes it harm") (emphasis original, quotations and citations omitted); *see, e.g., Texas Health & Human Servs. Comm'n v. United States*, 193 F. Supp. 3d 733, 741 (N.D. Tex. 2016) (dismissing APA challenge to the resettlement of Syrian refugees on the grounds that consultation under the Refugee Act does not constitute "agency action"). In addition, not only must the agency action be discrete to be subject to judicial review, it also must be *final*. *See id.*; *Home Builders Ass'n of Greater Chicago v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 614 (7th Cir. 2003).

Moreover, judicial review under the APA is precluded under 5 U.S.C. § 701(a)(2) when the agency action is "committed to agency discretion by law." *See Heckler v. Chaney*, 470 U.S. 821, 828, 834-35 (1985) (explaining that if there is no meaningful standards defining the limits of agency discretion, there is no law to apply under 5 U.S.C. § 701(a)(2)). The Supreme Court has held that the Immigration and Nationality Act ("INA") confers broad discretion on the Executive Branch, including the decision whether to initiate removal proceedings. *See Arizona v.*

---

[1] In his Second Amended Complaint, Farag does not specify which purported cause of action is based on which legal theory. However, given that all of his claims relate to government action, it appears that he is contending that each of his claims is based on the APA. To the extent he is arguing that 8 U.S.C. § 1182 creates a separate private cause of action that is the basis for Count VIII, that argument is addressed below in section II.B

*United States*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials. Federal officials, as an initial matter, must decide whether it makes sense to pursue removal at all") (internal citation omitted). Although the Federal courts do have a role in determining whether an alien is inadmissible or may be removed from the United States, that role is limited to the Courts of Appeals reviewing determinations made by the immigration courts and the Board of Immigration Appeals. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9).

Here, Farag cites the APA as a basis for his claims against the Government. 2d Am. Compl. ¶ 10. However, he fails to allege: (i) a discrete agency action (ii) that is final. Thus, he lacks the two requirements for stating an action under the APA. *See Norton*, 542 U.S. at 62, 64; *Home Builders*, 335 F.3d at 614. Rather his claims are, on their face, broad programmatic challenges to Government policy choices. *See* 2d Am. Compl. ¶¶ 91-109, 115-25 (Counts II, III, IV, VI challenging how the Government administers U.S. immigration law), ¶¶ 110-14 (Count V challenging the President enforcement of immigration law through executive orders), ¶¶ 126-30 (Count VII challenging how the Government "vets" individuals entering the United States), ¶¶ 131-42 (Count VIII challenging the conduct of U.S. foreign policy). In the absence of any final, discrete agency action, his claims should be dismissed.

Moreover, any judicial review would be precluded by 5 U.S.C. § 701(a)(2) because there is no meaningful legal standard for how the Government enforces U.S. immigration law and decides to commence removal proceedings. *See Arizona*, 132 S. Ct. at 2499. For these reasons, Farag's claims under the APA should be dismissed for failure to state a claim.

As for Count IX's demand for monetary compensation, discussed in more detail below, Farag cannot rely on the APA in support of that claim because the APA by its plain terms does

not provide for that form of relief. *See Veluchamy v. F.D.I.C.*, 706 F.3d 810, 815 (7th Cir. 2013) ("'An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party'") (quoting 5 U.S.C. § 702; emphasis in *Veluchamy*); *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (United States has not waived its sovereign immunity when it comes to APA claims seeking money damages). Thus, in the absence of any other legal basis for a claim for money damages – and there is none, *see infra*, section III – a claim for money damages that seeks to rely on the APA must be dismissed.

It is also unclear from the Second Amended Complaint whether Farag is asserting an APA challenge against the President. The President appears to be the subject of Count V, which seeks an order compelling the President to modify an executive order relating to immigration. 2d Am. Compl. ¶ 114. But the Supreme Court has ruled that the President is not an "agency" under the APA and, thus, not subject to judicial review under the APA. *Franklin v. Massachusetts*, 505 U.S. 718, 796 (1992). And no other authority exists for the Court to order the President to issue an executive order. From the earliest days of the Republic, the Supreme Court has found no basis for the judiciary to compel the President, at the bequest of private litigant, to undertake a particular action that lies in the President's discretion to faithfully execute the law. *See Mississippi v. Johnson*, 71 U.S. 475, 499 (1866) ("An attempt on the part of the judicial department of the government to enforce the performance of such duties by the President might be justly characterized, in the language of Chief Justice Marshal[l], as 'an absurd and excessive extravagance.'" (quoting *Marbury v. Madison*, 5 U.S. 137, 170 (1803) (Marshall, C.J.))).

### B. Farag has failed to state a claim under 8 U.S.C. § 1182.

In Count VIII of his Second Amended Complaint, Farag seeks to preclude the admission of certain foreign leaders by asserting a claim under 8 U.S.C. § 1182(a)(2)(G). 2d Am. Compl. ¶¶ 132-42. This claim fails because this statutory provision does not create a private right of action.

The United States and its agencies are immune from suit absent a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Such a waiver "cannot be implied but must be unequivocally expressed." *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id.*; *see Texas Health*, 193 F. Supp. 3d at 739-740 (holding that the Refugee Act does not create a private cause of action to challenge the resettlement of refugees in this country).

Congress knows how to create a private cause of action under the INA when it intends to do so. For example, Congress specifically provided a private cause of action for persons adversely affected by an employer's discriminatory practices based on national origin or citizenship status by allowing private parties to file a charge of discrimination with the Office of the Chief Administrative Hearing Officer. *See* 8 U.S.C. § 1324b(d)(2). Yet nowhere else in the statute did Congress establish a private cause of action to enforce the immigration laws. In the absence of any kind of "rights-creating language necessary" to "convey a congressional intent to create a cause of action," 8 U.S.C. § 1182 should not be construed as creating a private remedy for an alleged violation. *See Texas Health*, 193 F. Supp. 3d at 739-740. Thus, Farag's attempt to pursue a claim under 8 U.S.C. § 1182 to potentially bar in the future certain unnamed foreign leaders from entering the country must fail.

11

Even if Farag could bring a private civil suit against the Government under Section 1182, Count VIII would still fail to state a claim. Under 8 U.S.C. § 1182(a)(2)(G), which Farag cites as the statutory basis for Count VIII, 2d Am. Compl. ¶ 132, "[a]ny alien who, while serving as a foreign government official, was responsible for or directly carried out, any time, particularly severe violations of religious freedom" is inadmissible 8 U.S.C. § 1182(a)(2)(G).[2] A relevant exception exists, however, to this ground of inadmissibility. Individuals who qualify under 8 U.S.C. § 1101(a)(15)(A) for certain visas, including so-called "A-1 visas," are exempt from most grounds of inadmissibility, including the inadmissibility grounds established in Section 1182(a)(2)(G). *See* 8 U.S.C. § 1102 ("for so long as they continue in the nonimmigrant classes enumerated in this section, the provisions of this chapter relating to ineligibility to receive visas and the removal of aliens shall not be construed to apply to nonimmigrants (1) within the class described in paragraph (15)(A)(i) of section 1101(a) of this title. . .").

A sitting head of state generally qualifies for an A-1 visa. *See* 8 U.S.C. § 1101(a)(15)(A)(i); 9 Foreign Affairs Manual § 402.3-5(C). Thus, contrary to Farag's assertions, 2d Am. Compl. ¶ 132-33, 8 U.S.C. § 1182(a)(2)(G) is not a proper basis for refusing a visa for an individual who qualifies for a visa under 8 U.S.C. § 1101(a)(15)(A)(i). *See* H.R. Rep. No. 82-1365, at 34 (1952) (noting "constitutional limitations" that require excluding A visa holders from most grounds of exclusion and deportation); c*f. Zivotofsky ex rel. Zivotofsky v.*

---

[2] The Second Amended Complaint contains a reference to another subsection, 8 U.S.C. § 1182(a)(3). 2d Am. Compl. ¶ 97. That provision bars the admission of certain aliens on security and related grounds. Farag states this subsection also bars "the admission of the people that adopt or promote teachings like Sharia," *id.*, but, in fact, this statutory provision makes no mention of religion or of religious law. If Farag seeks an advisory opinion from the Court on the meaning of 8 U.S.C. § 1182(a)(3) for use in future litigation, this is improper for the reasons discussed in section I.

*Kerry*, 135 S. Ct. 2076, 2085 (2015) (noting that the Reception Clause "direct[s] the President alone to receive ambassadors").[3] In sum, Farag has failed to state a claim under 8 U.S.C. § 1182.

Farag argues that the inadmissibility bar at 8 U.S.C. 1182(a)(2)(G) still applies to heads of state because the bar refers to "any alien" – not to "an immigrant" – who shall be ineligible for a visa, while 8 U.S.C. § 1101(a)(15)(A) does not address "an alien" but merely defines who is an immigrant. 2d Am. Compl. ¶ 134. Farag is incorrect. As discussed above, the relevant exception to the inadmissibility bar at 8 U.S.C. 1102(a)(2)(G) arises primarily from 8 U.S.C. § 1102, which makes the inadmissibility bar at Section 1182(a)(2)(G) inapplicable to persons defined as non-immigrants by 8 U.S.C. § 1101(a)(15)(A)(i) and (ii). Because 8 U.S.C. § 1101(a)(15)(A)(i) defines certain government officials as non-immigrants, they benefit from the exception at 8 U.S.C. § 1102 to the inadmissibility bar at 8 U.S.C. § 1182(a)(2)(G).

### C.     Farag is not within the zone of interests of any of the statutes he cites.

Dismissal is also warranted for failure to state a claim because Farag does not fall within the zone of interest of any statutes he sues under. Under the zone of interests test, a plaintiff cannot sue when his or her interests "are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed" that Congress has authorized the plaintiff to sue. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1389 (2014); *see, e.g., Fed. for Am. Immigr. Reform v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996) (affirming dismissal of challenge to admission of Cuban immigrants and explaining that the "immigration context suggests the comparative improbability of any congressional intent

---

[3] As the Attorney General noted over a century and a half ago, the President's right of reception extends to "all possible diplomatic agents which any foreign power may accredit to the United States." *Presidential Power Concerning Diplomatic Agents and Staff of the Iranian Mission*, 4A Op. O.L.C. 174, 180 (1980) (quotations and citations omitted); *cf. United States v. Curtiss-Wright Export Corp.,* 299 U.S. 304, 320 (1936) (explaining that the President is "the sole organ of the federal government in the field of international relations . . .").

to embrace as suitable challengers" all individuals that consider "themselves as likely to suffer from the generic negative features of immigration").

Here, Farag is not within the zone of interests of any of the statutes he cites in his Amended Complaint. There is no indication that Congress intended to authorize him, or other similarly situated individuals, to sue over immigration policy. *See Lexmark*, 134 S. Ct. at 1389. Any purported injury that he claims from the admission of certain aliens "is an injury common to the entire population, and for that reason seems particularly well-suited for redress in the political rather than the judicial sphere." *See Fed. for Am. Immigr. Reform*, 93 F.3d at 901. In sum, for this additional reason, Farag's Amended Complaint should be dismissed.

### III. Counts IX should be dismissed for lack of subject matter jurisdiction.

Count IX should be dismissed because Farag has not exhausted any administrative remedies, as required for him to sue the United States for damages, and for lack of subject matter jurisdiction. In Count IX, Farag asks for $1.8 billion in damages to "compensate plaintiff for destroying his business." 2d Am. Compl. ¶¶ 143-161. Farag alleges that he spent thousands of dollars developing a patent for separating uranium isotopes to reduce the cost of uranium fuel, but that months ago he discovered that Bill Clinton, Hillary Clinton, and Barack Obama "sold our Nuclear Industry" to Russia and "destroyed it inside the USA," causing Farag to suffer annual losses of $600 million. *Id.* ¶ 144-159.

The Federal Tort Claims Act allows a person to sue the United States for damages. 28 U.S.C. § 1346(b). But a person cannot sue the United States for damages unless the person "has previously submitted a claim for damages to the offending agency." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786 (7th Cir. 2014); 28 U.S.C. § 2675(a) (barring suit against United States for damages "unless the claimant shall have first presented the claim to the appropriate Federal

14

agency"). This administrative claim requirement is a filing prerequisite that cannot be waived. *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972).

Here, Farag does not allege that he ever presented an administrative claim to any federal agency. And because he does not name his alleged offending federal agency, Defendants cannot reasonably search for any such administrative claim. Count IX, therefore, should be dismissed, because it was filed before the exhaustion of administrative remedies, in violation of 28 U.S.C. § 2675(a). *McNeil v. United States*, 508 U.S. 106, 107, 112 (1993) (affirming dismissal where plaintiff filed suit before exhausting his administrative remedies).

Further, the Federal Tort Claims Act leaves the United States immune from lawsuits challenging officials' exercise of their "discretionary function." 28 U.S.C § 2680(a). That limitation "prevent[s] judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 322 (1991). Farag challenges decisions allegedly made by previous administrations, such as solar panel subsidies and "banns" on uranium mining, that fall within the FTCA's "discretionary function" exception. *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005); 2d Am. Compl. ¶ 155. The Court should, thus, dismiss Count IX for lack of subject matter jurisdiction.

## CONCLUSION

WHEREFORE, the Government requests that this action be dismissed with prejudice.

Dated: October 11, 2017	Respectfully submitted,

                                  CHAD A. READLER
                                  Acting Assistant Attorney
                                  General, Civil Division

                                  WILLIAM C. PEACHEY
                                  Director
                                  District Court Section
                                  Office of Immigration Litigation

                                  JEFFREY S. ROBINS
                                  Assistant Director
                                  District Court Section
                                  Office of Immigration Litigation

                                  AARON S. GOLDSMITH
                                  Senior Litigation Counsel

                                  JOEL R. LEVIN
                                  Acting United States Attorney

                                  <u>s/ Alex Hartzler</u>
                                  ALEX HARTZLER
                                  Assistant United States Attorney
                                  219 South Dearborn Street
                                  Chicago, Illinois 60604
                                  (312) 886-1390
                                  alex.hartzler@usdoj.gov

                                  <u>s/ Hans H. Chen</u>
                                  HANS H. CHEN
                                  Senior Litigation Counsel
                                  U.S. Department of Justice, Civil Division
                                  Office of Immigration Litigation
                                  District Court Section
                                  P.O. Box 868, Washington, D.C. 20044
                                  Telephone: (202) 307-4469
                                  Facsimile: (202) 305-7000
                                  hans.h.chen@usdoj.gov

                                  COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

      I hereby certify that on October 11, 2017, I filed the foregoing document with the Clerk of the Court through the Court's ECF system and that on this day, it will be served electronically upon registered participants identified on the Notice of Electronic Filing.

Dated: October 11, 2017          */s/ Hans H. Chen*
                                        HANS H. CHEN
                                        Senior Litigation Counsel
                                        United States Department of Justice
                                        Civil Division
                                        Office of Immigration Litigation
                                        District Court Section

                                        COUNSEL FOR DEFENDANTS